Your honors, good morning. With me at council table is June Koper and she helped me with the briefs in this case. And your name is? I'm sorry, my name is Mark E. Ellis. All right, thank you. If I can have one minute and rebuttal please. All right. First of all, the points that we've quite lengthily, and I apologize for that, put forth in our appellants and our reply brief. I would just briefly like to talk about some of them. First of all, as this court is aware, in Mahan v. Credit Bureau, Placer County, the Ninth Circuit itself indicated in express language that, and by the way, in interpreting Section 15 U.S.C., Section 1692G of the Fair Debt Collection Practice Act, but the court there expressly said, if a dispute is not put in writing, the debt collector may assume that the debt is valid. And this letter, which is at issue, or the language in this letter, is virtually verbatim, if not verbatim, with that quote. Now, in the case below. Well, I guess you've got, in different sections, some you've got writing and some you don't. And what is your authority for suggesting that we go beyond the plain reading of the Section 1692G3 and interpret the statute to impose a writing requirement? Right. I mean, that we, Congress knows how to say it when they mean it, and we have to assume that when they don't say it, they know how to not say it. So how do we write this in? The plain meaning, it's not there. Well, I think that with respect to the plain meaning, I believe that the plain meaning is ambiguous, Your Honor. And the reason I believe that is that if you look at 1692GA3, just in its pure subsection, I agree with you. I mean, I would... It's not there, right? I'm not missing it. It's not there. Okay. And at all. But the issue is, is not whether it is there. It is the issues that within that whole scope of 1692G, I mean, that section has to be read, I think, as a whole, and not broken into various parts. And so, Your Honor, you know, I guess I wouldn't be standing here if 1692GA3 was not within the validation of debts mechanism that is embodied in 1692G. But then how do you square your position with the fact that the statute provides limited protection to the debtor if the debt is disputed orally, and broader protections if the notice is in writing? And I think that's the crux of it. I mean, I think the crux is the presumption or assumption, if I may, inherent in the way that you ask the question, and that is that the statute provides limited protections if there is some sort of oral dispute. The entire course and scope and universe of the validation of debts, Your Honor, is in 1692G. And if someone can point out to me where in 1692G there is anything that says that there are limited protections, or that this raises a red flag, or that there is some sort of duty on the part of a debt collector to go forward and do any sort of investigation or verification or validation based upon an oral dispute, I have yet to see it. And, you know, we've pointed case after case to you from across the country where, in fact, debt collectors, in looking at this, saying, look, all we want is some clarification. Does the dispute mechanism have to be in writing, or can it be done orally? And so I will tell you, as someone that works frequently in this area of law, is that the debt collectors are between a rock and a hard place because whenever they say, okay, you know what, we're not going to get into these semantics of what Congress meant. What we're going to do is we're going to say, when oral dispute triggers everything, then they get in trouble that way. What we've got is a derogation of what we would normally expect of common law. You allege the debt is owed. You write the letter. And you, in effect, have a judgment if we go, if we say the statute says what you say it says, in other words, they must refute in writing, or your letter to them alleging that they owe you money is, has an effect, has some force of a judgment. Well, no, I don't think that's... Well, it won't attach to their property, but you can proceed to collect it in any way you want. Well, that's right. I mean, and I... You can own all the costs you want. Well, it's not a judgment. And you see, I guess I'd better go back and... No, it isn't a judgment, because if it was a judgment, you'd be limited into what you can add on. And here we started out with a debt of how much? It was, I think, the face amount of a check. Like $42 or something? Yes, ma'am. And we ended up with, well, she had to pay. There were some add-on fees. But I... But what do you mean? Your Honor, I don't have that in front of me right now. But... Well, I recall it. But go ahead. And you see, that's when we look at this, and we see that you have added, well, you say you haven't, but it's argued that you've added an extra requirement. You've said she must refute in writing. And if the statute doesn't say it, and you have the right to add A, B, C, D, E, more than tripling the amount of money that the debt was originally fixed, just because she didn't respond in writing. I understand your concern on the add-on fees. Our concern is that we don't do more than Congress requires. And what Congress requires is that they deny. Well, what 1692 G.A. 3 specifically says is that if you dispute the debt, Your Honor, it doesn't say in writing, it will be, if you don't, if you do dispute, there's no writing requirement, it will not be presumed valid. Right. Okay. And if a written initiation of a dispute, one, requires the collection, provide the debtor with verification of the debt or a copy of the judgment against the debtor, two, provide the debtor with the name and address of the original creditor, if different from the current creditor, and three, cease collection of the debt until such information is given. Right? Yes, ma'am. And that's the point. See, that's the point when courts like the Third U.S. Circuit Court of Appeals and Graziano and many district courts have looked at this. And if I may, Your Honor, come back to your questions. The problem is, is what does that assumption of validity do? And we talk about that a little bit in the briefs, but I want to talk specifically with you about that, if I may. Okay, let's say that someone does orally dispute. Okay? And that's all they do. Well, under the statutes, Your Honor, there's no cessation of the collection. The collection activity doesn't stop. Only under 1692GB, the next section down, and that specifically refers back to Section A and says that it must be a written dispute to stop the collection. But an oral initiation of a dispute notice precludes the debt collector from giving the debtor's credit information to others without telling them, right? That the debt is disputed and, two, prohibits the debt collector from applying any payments by the debtor to the disputed debt if the debtor owes multiple debts. Right. I agree with the second part. I think I do disagree with you on the first part. There's nothing in 1692G that talks about, you know, what you say to third parties or what you can represent to third parties about the debt. Your Honor, what about 1692EA? Yes, ma'am. That's exactly right. But that's an entirely different section. And that doesn't apply. That is not limited in any way, shape, or form to the validation process. It doesn't relate to the first 30 days. It doesn't relate to writing or orally. Do you want to save a minute? Yes, ma'am. Thank you. If I could just finish this one thought. You're using your time now. All right. Then I'll stop. Thank you. May it please the Court. My name is Richard Rubin. I represent the Plaintiff Appellee Rita Camacho. What is remarkable about the defendant appellant's position in this case is not simply that it's asking this Court to disregard the plain language of the statute as written by Congress. And what's remarkable about this argument is not simply that they would make this extraordinary request for the prohibited reason of attempting to improve the purposes and serving the purposes of this law. What is remarkable is that applying this argument actually defeats the purposes of this law. And this gets down to the different reasons why Congress imposed the different requirements in the statute. There is, in section 1692GB, a procedure for disputing in writing and what a debt collector must do if a dispute is received in writing. But the remainder of the statute, with the exception of H, which is the application of multiple debts that Your Honor mentioned, for the rest of the statute, notification orally or by any other means is entirely effective. Entirely. Let me ask you this. Is our decision in Mahon controlling here? Or what effect does Mahon have on this case? It has no effect on this case, Your Honor. Why is that? I think that there are a number of reasons. One, of course, as we've mentioned, and the defendant has not refuted. I was surprised. I thought they abandoned the argument given their reply brief, but he stood up and started with it. Is that it is pure dicta as not only according to the authorities and the argument we made in our brief, but there have been several courts within this circuit which have ruled on this issue, each of which has rejected any concept that Mahon is precedential. And, indeed, the defendant just now did not say it was precedential. He said that the Ninth Circuit indicated in Mahon. Well, yes, they indicated. They were giving background that the Mahon court was giving a background summary on GB, the written requirement. That's what they were addressing. The section is entitled the verification of debts under GB. The citation that follows the language is to the Avila v. Rubin case in the Seventh Circuit, which is about written verification. The Mahon language is precisely what is this Court and every other court that's ever looked at in an appellate situation is seen as dicta. And it's not binding. It is not precedential. And, certainly, one can read the opinion and see that there was no intention on the part of the authors of that opinion to decide this issue presented today. None whatsoever. It's fairly clear they weren't aware of it. Tell me, I guess from the standpoint, let's just say that you both make decent arguments about this, and at the end of the day I throw my hands up and I say, I don't know what they intended. Do you win then? Absolutely. That's the reason that we give effect to the unambiguous language of congressional enactments. This is an interesting case. Well, he's saying it's ambiguous. What he said, if you listen carefully, he said it was ambiguous and then went on to point to 1692 GB. There is no requirement in this law to abandon congressional enactments because you don't like the structure within the section and the subsection. Last term the Supreme Court decided the Coons-Bewit case, which both sides rely on. And the very beginning of that case talks about ambiguity within the context of the statute. If this court or any court started looking for ambiguity merely by looking at the section in which something appears, we'll be disregarding congressional enactments left and right. Now, you're saying the legislation, even if we do, let's say if we even do look at legislative intent, you're saying that that supports your position? And that's exactly right. I have no idea why counsel would have denied the import of the Brady case, the First Circuit case for the E-8. Your Honor stated clearly, and that's what happened. Graziano was decided back in 1991, and it's easy to see why that court might have assumed and thought that there had to be a writing because they said there was no impact. They said it was ineffective to give a written, a nonwritten dispute. That's what they said. And up until then, there had been no cases that had said otherwise. And it's shown that. Mr. Rubin, this is the Third Circuit's answer to that argument. I'm going to just read these two sentences from a – this is a Graziano case, right? Yes, sir. With which you're familiar, I know. But they say this. Adopting Graziano's reading of the statute, which is your reading, right? Yes. Yes, sir. The debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. Yes, sir. The Third Circuit. Yes, sir. What's your response to that? The response is that in about seven years later, the First Circuit decided the Brady case and showed that an oral dispute does in fact create rights and remedies and duties. The debt collector in that case under E-8, 1692 E-8, was required to inform a credit bureau that the debt is disputed, which is an interface with the Fair Credit Reporting Act, which we haven't really discussed in the briefs. But again, when you start tinkering with the handiwork of Congress and wondering what is the import of oral versus why would Congress act in such a way, the reason is actually clear in this case. And in fact, we pointed out in our brief that just at the end of two years ago in the Fair Credit Reporting Act, the debt collection, the credit reporting law was amended, which we pointed out in Section 1681M, to require debt collectors under the FDCPA, to respond to theft of identity victims, oral disputes. Congress has weaved this fabric of rights and obligations. And the core here is the defendant in this case's position that this court should interfere with that and would throw into havoc what these coordinated efforts. Judge Farris, your point about the add-ons that were referred to, if a consumer tells a debt collector that I don't owe these add-ons, this is not my debt, I filed bankruptcy last week, they do this orally, the debt collector has to respond. The Randolph case from the Seventh Circuit, which we cited, is exactly that case. There is no written dispute. A debt collector innocently got a referral of a debt that was discharged in bankruptcy. The consumer told the debt collector this is a discharged debt, they're in a violation of the automatic stay, of course, and the debt collector immediately ceased communication in collection. That's their obligation. There is efficacy in an oral dispute. Totally. And I think that this case is... Well, I don't doubt that Congress can do whatever Congress wants to do. It can make oral, it can make written here. And it seems to me within this statutory scheme, we've got oral in some part of this, we've got written in some part of this. Precisely. So is it, just so that I correctly understand your position, is that either would be first, if they wanted to say written, they could have said written, they didn't. Absolutely. Number two, if they inadvertently left out written, but they meant to say it, if we can't know that, that's their job to fix it. And indeed, the Presley case, in which this court decided about 20 years ago, on what was called the mini Miranda warning, it's been cited in the briefs, this court took exception. There was a split in the circuits over the mini Miranda warning. This is an attempt to collect the debt and all information obtained will use that purpose. Another initial disclosure. And there was a debate, and Congress amended that section. They did exactly, Judge Callahan, what their role is in this constitutional system, to amend if there is a mistake and it's brought to their attention. Now, this alleged mistake has been brought to Congress' attention many times. There's been no attempt to amend it in this way. The Federal Trade Commission, this is totally outside the briefs. Mr. Ellis and I both work in this area almost exclusively. The Federal Trade Commission makes an annual report to Congress. It's available on the Federal Trade Commission website that has suggested changes to the FDCPA. They never mention this. Never. Not once. This case illustrates the reason why the Federal courts are constrained in exercising indeed, there is a principle. The Graziano case mentioned the principle. If there is incoherence in a statute, if it's irrational, indeed, the Federal courts are obligated or authorized to disregard the plain language and to not apply an irrational result. That is not what we have here. And the reason is so clear because here, why it should be so sparingly used. As we pointed out in the literacy studies that were cited in that brief, 25% of the American public, that includes people, cannot write a letter in English. Should the Congress then have said Graziano was wrong? I believe you'll see, Your Honor, that no court has ever followed Graziano. Graziano has not been followed by any court that has examined it since Brady was decided. Congress might have said that, but they haven't said that either. But the failure to correct a court decision is hardly a basis. Again, this would be changing the role between the judiciary and the Congress. That's something that people always argue. It's there. They argue it, Your Honor. If they thought it was wrong, they could have done something. And I believe this Court's never adopted such an argument either, responded to it. Thank you very much, Your Honor. Thank you. Thank you, Your Honor. Your Honor, just briefly, two points. Number one, with respect to the Brady decision, that is a decision that deals with 1692E8. That is under the misrepresentation section of the FDCPA. That creates the rights and remedies that a debtor will have against a debt collector for making misrepresentations based upon information that they learn wherever they learn it. I want to address your last or one of your last comments to counsel. And that is, well, if we just don't know what Congress intended, does the tie go to the appellee? Respectfully, my response to that is no. We do know what Congress intended. We know that Congress intended a written dispute mechanism. How do I know that? Because 1692G8-4 says it, 1692G8-5 says it, and 1692G-B says it. What you don't find anywhere. Well, that's not an exact response to my question because you're saying we do know. And I'm saying if I don't know, where does the tie go? But I guess my point is this. My point is that by looking at the structure of the section overall and looking at how it functions, the intent that there needs to be a written dispute mechanism is clear on the face of the statute when it is viewed holistically, as this Court has said and the United States Supreme Court says. And, you know, there are many, many cases where a literal interpretation of one subsection, the Coons case is a perfect example from the 2004 term of the United States Supreme Court where they say it's not plain on its face when you look at it overall. Thank you. Thank you, Your Honor. All right. This matter will then stand submitted.
judges: Farris, Tashima, Callahan